Westervelt *v.* Frech.

---

### P. VAN ALLEN WESTERVELT

*v.*

### THEODORE W. FRECH et al.

On a note made by the complainant for the accommodation of the endorser, with the payee's (the defendant's) knowledge that it was made for accommodation, the defendant recovered a judgment at law. Afterwards, the defendant, without the complainant's knowledge or consent, took the endorser's notes, some of which were paid and others renewed and not paid, on which judgment was recovered.—*Held*, that the giving of time to the endorser, by taking his notes, discharged the maker from liability on the original judgment.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. W. Griggs,* for complainant.

*Mr. John Schomp,* for defendants T. W. Frech & Co

THE CHANCELLOR.

The object of this suit is to protect the complainant against a judgment at law, recovered against him and his brother, Cornelius C. Westervelt, by Theodore W. Frech and Arthur A. Ten

Eyck (T. W. Frech & Co.,) October 5th, 1877, in the supreme court of this state, for $2,650.11, upon a promissory note made by the complainant for the accommodation of his brother Cornelius, to be discounted for the latter by T. W. Frech & Co. The judgment being wholly unpaid, an arrangement was made between Cornelius and Frech, on the 10th of December, five days after the judgment was recovered, by which the former was to give to T. W. Frech & Co. his check on a bank in Jersey City for $86.51, and his note, at three months, for $2,700, endorsed by Michael Sandford, on the understanding and agreement that if the check should be paid on presentation, after October 17th, 1877, and one-half of the note at maturity, with a renewal at three months for the other half and interest, and the note given in renewal should be paid in full at its maturity, it should be in satisfaction of the judgment, but the judgment was "to be valid and binding until the payment of the note and check,' according to the agreement. The check was duly paid; the note for $2,700 was not. It was renewed as to $2,600 of it; two notes being given therefor, one for $1,400 at two months, and the other for $1,200 at three months; the balance being paid in cash. The note for $1,200 was paid at maturity. The other was not, but renewed. In November, 1878, the note last given in renewal thereof being unpaid, the holder of it, the Somerset County Bank, to which the firm of T. W. Frech & Co. had endorsed it, brought suit on it in the supreme court, against Cornelius C. Westervelt, Michael Sandford, and Frech and his partner, Ten Eyck, and recovered judgment thereon December 28th, 1878. After the judgment was recovered, Cornelius C. Westervelt and Sandford, by agreement with Frech, gave him two notes for $600 each, and Cornelius C. Westervelt paid the amount of the interest in cash. These notes were given with a view to having them discounted by the Somerset County Bank, and the proceeds used for the payment of that judgment. They appear not to have been used at all. In March, 1880, an execution was, for the first time, issued on the original judgment, and it was levied on the property of the complainant. He then brought this suit for relief, on the ground that being a mere

Westervelt v. Frech.

surety, and known to Frech & Co. to be such, and they having given an extension of time to Cornelius C. Westervelt upon that judgment, he is, in equity, thereby discharged from liability on the judgment. He alleges that he did not, until that time, know that a judgment had been entered against him, and he alleges, also, that during the time between the entry of the judgment and the time of the acceptance, by Frech & Co. of the before-mentioned note of $1,200, in July, 1878, his brother was solvent, or, at least, had enough property to have enabled the complainant to indemnify himself therefrom if he had been compelled to pay the judgment against him; but that since the latter date both Cornelius and Sandford have been insolvent, and that if he is compelled to pay the balance due on the judgment against him, he will be without recourse for his indemnity, and will be compelled to lose his money.

The defendants insist that the fact that the complainant was a mere surety for his brother was not known to Frech, who transacted the entire business for his firm in taking the original note, recovering the judgment thereon, accepting the check and note given on the 10th of December (the receipt therefor was signed by him), and the rest of the business in connection with the claim. Frech says that the paper which Cornelius was to obtain and send to him to be discounted, was to be endorsed by the complainant; but, instead thereof, he received a note made by the complainant and endorsed by Cornelius. He does not say he supposed, or had any reason to think, that the note was not mere accommodation paper. The origin of the note was this: Cornelius owed the firm of T. W. Frech & Co. between $600 and $700 on a note given by him to them. Frech called on him for the money, but he could not pay it. In the course of the conversation which then took place between them, Cornelius asked him if he could obtain a loan for him; to which Frech replied that if Cornelius "would make good paper," he would try; and he says that Cornelius then said he would give him a note endorsed by P. Van Allen Westervelt, of Paterson. The note given to Frech to be discounted was, as before stated, made by the complainant and endorsed by Cornelius. Both Cornelius

and his sons, who were present at the conversation, swear that what Cornelius said was that he thought he could borrow some good paper, and on Frech's asking whose paper it would be, he replied that it would be that of his brother at Paterson. There is no reason to doubt that Frech knew that the complainant was merely an accommodation maker. He says he regarded Cornelius as worthless, but he never made any application to the complainant to pay the judgment until after all his transactions with Cornelius, for the payment of it, were at an end. And yet he says it was on the strength of the complainant's pecuniary responsibility alone that he took the original note. In all the transactions in reference to the judgment after its recovery, he dealt with Cornelius as the principal debtor. He says, indeed, that the agreement between him and Cornelius, in pursuance of which he received the original note, was that the latter was to give him a note to be made by Cornelius and endorsed by the complainant, while the note which Cornelius gave him was not made by the latter, but by the complainant, and endorsed by Cornelius. He knew, however, that the paper which was brought to him was made as security for a loan for Cornelius. He says, narrating the conversation out of which the note came—

"He [Cornelius] asked me if I could not engineer a loan through for him; I told him if he made good paper, I would try; he said he was very short just then and would like to use $2,500 or $3,000; I told him if he would make me a good note for $2,500 or $3,000, and allow me to deduct my bill, I would discount the note for him myself; he said he would give me a note endorsed by P. Van Allen Westervelt, of Paterson; as to the responsibility of P. Van Allen Westervelt, he referred me to Mr. Hogencamp, of the Second National Bank of Jersey City, who lived close by him; and I told him if Mr. Hogencamp said the note was good, and he would allow me to deduct my bill, I would give him the money; he brought the note to me; I did not know P. Van Allen Westervelt's signature; instead of his bringing a note endorsed by P. Van Allen Westervelt, he brought me P. Van Allen Westervelt's note; I sent our bookkeeper to Jersey City with the note to show to Mr. Hogencamp; I took his note, and that is the note on which this suit [the suit in which the judgment was recovered] was brought."

Cornelius swears that what he said to Frech was that he thought he could borrow some good paper; that Frech asked

him "whose paper?" and he replied that it was the paper of his brother in Paterson, and that Frech said that if he would let him keep his bill out of it he would discount it for him, first inquiring if it was good. He also says that in a day or two he received a telegram from Frech saying, "all right, send it along," and he obtained the paper and took it to Frech accordingly. His son, Charles S., testifies that his father told Frech that he could borrow the notes of his, the witness's, uncle in Paterson, or thought he could, and that Frech said he would inquire into the uncle's responsibility, and let the witness's father know. Cornelius, another son, says his father spoke of his, the latter's, brother's notes, and asked whether if he got his brother's notes Frech would discount them. He adds that he understood from the conversation that the notes were to be merely accommodation paper. The complainant, in his bill, says Cornelius applied to him to endorse his note for discount, for his accommodation, and that he, the complainant, drew the note himself, and instead of endorsing it, signed it as maker, for, as he says, no special reason, but because he thought that was "the proper way to draw a note given for accommodation." The note was made merely for accommodation and there was no understanding that the paper to be received by Frech for discount was to be business paper, but as before stated, on the other hand, it was to be paper on which the complainant was to be surety, made to secure a loan for Cornelius. The agreement of December 10th (made five days after the entry of the judgment on the original note), was an agreement by which Frech, for himself and his copartner, coplaintiff with him in the judgment, bound the plaintiffs in the judgment not to execute it, provided the check and note were paid according to the stipulation; that is, provided the check should be paid on presentation after the 18th of October, 1877, and one-half of the amount of the note paid at maturity (three months after its date, October 9th, 1877), and a renewal note made for the other half, at three months, with interest, and the note given in renewal should be paid at its maturity. It is true, the agreement stipulates that the "judgment is to be held valid and binding until such payment of the note and check," but the effect of that

stipulation is merely that the judgment shall stand as security in the meantime. The rights of the plaintiffs in the judgment against the surety were not thereby reserved; nor were the note and check taken merely as collateral security for the judgment. The plaintiffs in the judgment could, of course, have been restrained from proceeding on the judgment to recover the money due thereon, as against Cornelius, until after default in payment of the check and note according to the terms of the stipulation in that behalf. And if the surety had paid the judgment before such default, he could not have obtained indemnity under the judgment, for he could not have proceeded under it, since the complainant, by subrogation to whose rights alone he would have been enabled to use the judgment for the purpose, could not himself have proceeded upon it. It is an established principle that where the creditor, knowing the surety to be such, without his assent, and without reserving his rights as against him, gives time to the principal, the surety is *ipso facto* discharged from his liability; and that, too, if the time be given after a judgment recovered against both upon the contract; and it is also established that this doctrine applies where the contract is that of a maker of a negotiable promissory note made for the accommodation of the endorser. In the case in hand the firm of T. W. Frech & Co. lent to Cornelius C. Westervelt $2,500, less the discount on a promissory note of that amount, which they knew was made by the complainant without consideration and merely for the accommodation of the borrower. Having obtained judgment against both maker and endorser, the borrower, they gave the latter time without the assent or knowledge of the maker and without reserving their right to proceed against him. He was thereby discharged. It was urged upon the hearing that the agreement for time was made, or assented to, by an agent of the complainant, and the answer alleges that Sandford, the endorser on the note given after the judgment was recovered, was the agent of the complainant in that matter; but there is no evidence to support the claim. The complainant is entitled to a decree declaring him discharged from liability on the judgment, and the injunction will be made perpetual accordingly, but without costs.